IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| EARL R. LIPPERT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 12-CV-154-NJR |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Earl Lippert was the leader of a large-scale, multi-year methamphetamine manufacturing operation in Clinton County, Illinois, during the early 2000s. He pleaded guilty in November 2007 to a number of crimes and was sentenced to life in prison. Currently before the Court is his Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The Government responded to Lippert's motion (Doc. 3), and Lippert filed a reply (Doc. 4). The Court has carefully considered the briefs and all of the evidence submitted by the parties, and for the reasons set forth below, the motion is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

**A. CRIMINAL CASE**

Between January 2003 and August 2006, it is estimated that Earl Lippert produced almost five kilograms of methamphetamine. *United States v. Earl Lippert*, SDIL Case No. 3:06-cr-30161, Docs. 217, 276-2. At least five other individuals worked with

him, including his wife. *Id.* at Docs. 217, 276-2. They helped him obtain ephedrine and other supplies needed to make methamphetamine, helped him cook the methamphetamine, and guarded the property during the cooks. *Id.* at Docs. 217, 276-2. Lippert also brought his fourteen-year-old daughter into the conspiracy. *Id.* at Docs. 217, 276-2. Lippert and his daughter had previously been estranged, but they began to reestablish their relationship around August 2004. *Id.* at Docs. 217, 276-2. She visited her father every other weekend, and as she tells it, they smoked methamphetamine every day that she was with him and they were "high 24/7." *Id.* at Doc. 217, p. 6. Each time she left to return to her mother's house, he gave her methamphetamine to take with her. *Id.* at Doc. 217. Lippert also took his daughter with him to buy or steal supplies needed to cook methamphetamine, including batteries, salt, filters, and pseudoephedrine pills. *Id.* at Doc. 217. On one occasion, she went with him to steal anhydrous ammonia from a tank in a farmer's field. *Id.* at Doc. 217.

Horrifically, Lippert frequently had sex with his daughter after they got high. *Id.* at Docs. 217, 276-2. On one instance in June 2005, after having sex with her father, she climbed a tree in the backyard and fell, breaking her back. *Id.* at Docs. 217, 276-2. As a result, she is paralyzed from the waist down and confined to a wheelchair. *Id.* at Docs. 217, 276-2. Following the accident, she continued to visit Lippert every other weekend. *Id.* at Doc. 217. And Lippert continued to get her high and had sex with her on at least two more occasions. *Id.* at Docs. 217, 276-2.

Lippert was finally arrested in October 2006 on a criminal complaint. *Id.* at Docs. 1, 2, 3). He and his wife were indicted the next month. *Id.* at Doc. 15. They were charged

with one count of conspiring to manufacture methamphetamine, and he was also charged with two counts of manufacturing methamphetamine and one count of giving methamphetamine to his teenage daughter. *Id.* at Doc. 15. A superseding indictment was filed in January 2007, which added his four other cohorts to the conspiracy charge, but did not add any new charges against Lippert. *Id.* at Doc. 42.

An attorney from the CJA Panel, Thomas Carnes, was appointed to represent Lippert. *Id.* at Docs. 11, 12. Carnes took a number of actions to prepare the case for trial, including seeking an extensive amount of discovery from the Government, formulating and filing a witness list, and motioning the Court to exclude a variety of evidence. *Id.* at Docs. 29, 157, 158, 159. On November 6, 2007, the parties appeared for trial in front of District Judge G. Patrick Murphy, who is now retired. *Id.* at Doc. 165. Prior to jury selection, Judge Murphy took up the various motions *in limine* filed by the parties. *Id.* at Doc. 273, pp. 13; Docs. 101, 159. Of particular relevance was the Government's motion seeking to bar any mention at trial of the sexual relationship between Lippert and his daughter. *Id.* at Doc. 101. Carnes took an unusual and unexpected position and objected to the motion. *Id.* at Doc. 273, pp. 1-13. He explained that he did so in order to leave open the ability to impeach and discredit Lippert's daughter, who was an important Government witness. *See id.* at Doc. 273, pp. 1-13. Judge Murphy emphasized the incendiary nature of the testimony and discussed the limited ability Carnes would have under the Federal Rules of Evidence to impeach Lippert's daughter. *Id.* at Doc. 273, pp. 6–7. Judge Murphy also repeatedly asked if Carnes had discussed the strategy with Lippert, and Carnes answered affirmatively. *Id.* at Doc. 273, pp. 8–9. After concluding

Carnes and Lippert had discussed the issue and fully understood the ramifications of the objection, Judge Murphy denied the Government's motion thus preserving Lippert's right to pursue a trial strategy. *Id.* at Doc. 273, pp. 9-10.

Before Judge Murphy heard arguments on the other motions *in limine*, Carnes conveyed Lippert's willingness to plead guilty to Counts 1, 3, and 4. *Id.* at Doc. 273, p. 13. But Lippert did not want to plead to Count 2 (for giving his daughter methamphetamine) unless he saw a lab report showing that she had tested positive for the substance. *Id.* at Doc. 273, p.14. The Government pointed out that all of his daughter's medical records had been provided to Carnes, including a lab report documenting that she had methamphetamine in her blood stream during a stay at the hospital. *Id.* at Doc. 273, p. 13. Carnes located the lab report, and the Court recessed while he reviewed it with Lippert. *Id.* at Doc. 273, p. 14. Upon resuming, Lippert stated that he wanted to make an open plea of guilty to all four Counts in the Superseding Indictment. *Id.* at Doc. 273, p. 15.

A Rule 11 colloquy was conducted where, under oath and penalty of perjury, Lippert acknowledged that he was advised and knowledgeable of his rights, the charges pending against him, and the potential sentences he could receive. *Id.* at Doc. 273, pp. 15–26. Lippert stated he was satisfied with Carnes's representation and had plenty of time to discuss the case with him. *Id.* at Doc. 273, pp. 18, 20. He further stated he was not pleading guilty under duress or promise. *Id.* at Doc. 273, p. 25. Lippert then pleaded guilty to Counts 1, 3, and 4 of the superseding indictment, but he refused to plead guilty to Count 2. *Id.* at Doc. 273, pp. 26-31. He stated he wanted to go to trial on

that count. *Id.* at Doc. 273, p. 30. Judge Murphy recessed in order to reassemble the jurors. *Id.* at Doc. 273, p. 31. During the recess, Carnes conferred with Lippert regarding his decision to go to trial on Count 2, and moments before the jury was called back in, Lippert again indicated that he wished to plead guilty to Count 2. *Id.* at Doc. 273, pp. 31–32. This time, Lippert followed through. *Id.* at Doc. 273, pp. 32–33.

Probation was ordered to complete a presentence investigation report ("PSR"). *Id.* at Doc. 217. According to the PSR, Lippert's relevant conduct was 4.79 kilograms of methamphetamine, which resulted in a base offense level of 35. *Id.* at Doc. 217. The PSR further indicated that a number of enhancements were applicable, including a six-level enhancement for exposing his daughter to a substantial risk of harm by having her handle anhydrous ammonia; a two-level enhancement for using his minor daughter to commit a crime by providing her with methamphetamine and using her to obtain materials to manufacture methamphetamine; and a two-level enhancement for threatening a witness. *Id.* at Doc. 217. Consequently, Lippert's total offense level was calculated to be 43, and his criminal history category was III. *Id.* at Doc. 217.

The statutory range on Count 1 for conspiracy to manufacture methamphetamine was twenty years to life, and his guideline range was life imprisonment. *Id.* at Doc. 217. The statutory range on Count 2 for distributing methamphetamine to a minor was not less than one year or more than sixty years, which became his guideline range. *Id.* at Doc. 217. As for Counts 3 and 4, the PSR indicated that because of Lippert's prior conviction for a felony drug offense, a 21 U.S.C. § 851 notice of enhancement was filed, which raised the statutory maximum penalty on

these counts from 240 to 360 months; 360 months became his guideline range. *Id.* at Doc. 217.

Carnes filed thirty-three separate objections to the PSR. *Id.* at Docs. 190, 191. Most of the objections attacked the applicability of the enhancements that increased Lippert's offense level (and therefore his guideline range). *See id* at Docs. 190, 191. Carnes did not, however, make any argument regarding the applicability of the § 851 enhancement. *See id* at Docs. 190, 191. Lippert also filed a *pro se* request to withdraw his guilty plea on the grounds of coercion and ineffective assistance of counsel. *Id.* at Doc. 215.

At sentencing on August 17, 2008, Judge Murphy denied Lippert's *pro se* request to withdraw his guilty plea because it was not made in a properly or timely filed motion, and Judge Murphy was convinced that the plea was knowing and voluntarily. *Id.* at Doc. 270, p. 4. After hearing the parties' arguments regarding the applicability of the enhancements, Judge Murphy found that all of the enhancements listed in the PSR applied, and he denied all of Lippert's objections. Judge Murphy sentenced Lippert to the statutory maximum of life imprisonment on Count 1, 480 months' imprisonment on Count 2, and the statutory maximum of 360 months' imprisonment on Counts 3 and 4, with all sentences to run concurrently. *Id.* at Docs. 216, 220.

## B. DIRECT APPEAL

Lippert appealed his sentence to the Seventh Circuit Court of Appeals, and Carnes continued to represent him on appeal. *United States v. Earl Lippert*, SDIL Case No. 3:06-cr-30161, Doc. 222. During the appeal, Carnes was subject to multiple show cause orders for failing to litigate and filing improper *Anders* briefs. *Id.* at Doc. 276-2;

(*also available at United States. v. Lippert*, 401 Fed.Appx. 137, 139 (7th Cir. 2010)). This culminated in the Seventh Circuit discharging Carnes as Lippert's counsel and barring him from any future appointments in the Court of Appeals. *Id.* at Doc. 276-2. Lippert was appointed new counsel. *Id.* at Doc. 276-2. His new counsel argued the § 851 enhancement applied to Counts 3 and 4 was illegal as no notice was filed prior to the hearing. *Id.* at Doc. 276-2. Additionally, Lippert filed a *pro se* supplemental brief arguing the District Court erred by refusing to allow him to withdraw his guilty plea, improperly admitting hearsay evidence at sentencing, and failing to address the 18 U.S.C. § 3553(a) sentencing factors during sentencing. *Id.* at Doc. 276-2.

On November 24, 2010, the Seventh Circuit denied Lippert's *pro se* requests, but granted his appeal regarding the improper imposition of the § 851 enhancement. *Id.* at Doc. 276-2. In particular, the Seventh Circuit held that the district court erred by increasing the statutory maximum penalty on Counts 3 and 4 because no § 851 notice of enhancement had ever been filed. *Id.* at Doc. 276-2. Consequently, the statutory maximum penalty for Counts 3 and 4 was only 240 months, not 360 months. *Id.* at Doc. 276-2. Instead of remanding the case for resentencing, however, the Seventh Circuit simply modified Lippert's sentence to reflect the correct maximum penalty for Counts 3 and 4. *Id.* at Doc. 276-2.

## C.  § 2255 PETITION

On February 22, 2012, Lippert filed the instant motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 based on ineffective assistance of counsel (Doc. 1). The Court has extracted from Lippert's motion that Carnes was ineffective because

he: (1) was unprepared for trial; (2) objected to the Government's motion *in limine*; (3) misinformed Lippert of his potential sentence; (4) coerced Lippert into pleading guilty with inflammatory statements; (5) failed to object to the § 851 enhancement; and (6) was discharged by the Seventh Circuit. The Court directed the Government to respond to the motion, and the Government did so (Doc. 3). Lippert in turn replied, re-asserting his previous arguments (Doc. 4).

## DISCUSSION

### A.  PRINCIPLES GOVERNING § 2255 MOTIONS

28 U.S.C. § 2255 requires a court to vacate, set aside, or correct the sentence of a prisoner in custody if it finds that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States,* 467 F.3d 1063, 1068 (7th Cir. 2006)). It "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted).

Courts can often decide § 2255 motions without an evidentiary hearing. *See Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001) ("A district court need not grant an evidentiary hearing in all § 2255 cases.") A hearing is not required if "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief."

*Hutchings v. United States*, 618 F.3d 693, 699–700 (7th Cir. 2010) (*citing Torzala v. United States,* 545 F.3d 517, 525 (7th Cir. 2008)). On the other hand, a hearing should be granted if the petitioner "alleges facts that, if proven, would entitle him to relief." *Hutchings,* 618 F.3d at 699 (citing *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009)).

In this instance, Lippert has requested an evidentiary hearing (Doc. 1, p. 19). For the reasons discussed below, however, the record in this case demonstrates that Lippert is not entitled to relief on his petition. Therefore an evidentiary hearing is not warranted.

**B.  INEFFECTIVE ASSISTANCE OF COUNSEL**

A claim of ineffective assistance of counsel is properly raised in a § 2255 motion because it implicates the Sixth Amendment, which provides criminal defendants the right to counsel. U.S. CONST. amend. VI. "[A]nd inherent in this right is that the defendant is entitled to *effective* assistance of counsel." *United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir. 2009) (citing *McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970)) (emphasis added). Generally speaking, counsel is ineffective when his or her "conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Recendiz*, 557 F.3d at 531 (quoting *Strickland v. Washington,* 466 U.S. 668, 686 (1984)).

Claims of ineffective assistance of counsel are analyzed under the two-part test described in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, the petitioner bears the burden of establishing both that his counsel's performance "was objectively deficient" and that he "was prejudiced by the subpar representation." *United*

*States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011) (citing *Strickland*, 466 U.S. at 687–96). "Surmounting *Strickland*'s high bar is never an easy task." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010)). *See also Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006) ("[A] party bears a heavy burden in making a winning claim based on ineffective assistance of counsel." (quoting *Fountain v. United States,* 211 F.3d 429, 434 (7th Cir. 2000))); *Sullivan v. Fairman*, 819 F.2d 1382, 1391 (7th Cir. 1987) (*Strickland* "erect[s] a high hurdle for the petitioner. Indeed, we expect that few petitioners will be able to pass through the 'eye of the needle' created by *Strickland*." (quoting *Matthew* 19:24)).

With respect to the performance prong, judicial scrutiny is "'highly deferential' and reflects 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (quoting *Strickland*, 466 U.S. at 689). The petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Koons*, 639 F.3d at 351 (citing *Strickland,* 466 U.S. at 688). "This means identifying acts or omissions of counsel that could not be the result of professional judgment." *Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011) (internal citation omitted). The court must then decide whether those acts or omissions "amounted to incompetence under 'prevailing professional norms,' not whether [they] deviated from best practices or most common custom." *Sussman*, 636 F.3d at 349 (citing *Harrington*, 562 U.S. at 105).

As for the prejudice prong, a petitioner must show "a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different,

such that the proceedings were fundamentally unfair or unreliable." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013) (citing *Jones*, 635 F.3d at 915). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Blake*, 723 F.3d at 879 (citing *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006)).

The Court may address the elements of the *Strickland* test "in whichever order is most expedient." *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009); *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.") A petitioner's "failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993) (citing *United States v. Slaughter*, 900 F2d 1119, 1124 (7th Cir. 1990)).

### 1.   Ineffective Assistance Regarding Guilty Plea

Lippert alleges that a number of errors by Carnes—his unpreparedness for trial, his objection to the Government's motion *in limine*, and his misinformation about potential sentencing—influenced Lippert's decision to plead guilty to Count 2 for distributing methamphetamine to his teenage daughter. Lippert claims that but for those errors, he would not have pleaded guilty and would have insisted on going to trial. Importantly, Lippert is not claiming that his counsel's ineffectiveness influenced his guilty plea as to Counts 1, 3, and 4 (*see* Doc. 4 -- "The record in this case is very clear as to Mr. Lippert's guilt on Counts 1, 3, and 4.") He is only challenging his plea as to Count 2.

To establish prejudice in the context of a guilty plea, a petitioner must show "that there is a reasonable probability that he would not have pled guilty absent his attorney's deficient conduct." *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *United States v. Cieslowski*, 410 F.3d 353, 358–59 (7th Cir. 2005) ("He must also show that his lawyer's deficiency was a decisive factor in his decision to plead guilty."). "To make that showing, the petitioner must do more than simply allege that he would have insisted on going to trial; he must also come forward with objective evidence that he would not have pled guilty." *Hutchings*, 618 F.3d at 697 (citation and internal quotation marks omitted). "Objective evidence includes the nature of the misinformation provided by the attorney to the petitioner and the history of plea negotiations." *Id.* (citing *Julian v. Bartley*, 495 F.3d 487, 499 (7th Cir. 2007)).

### a. Unpreparedness for trial

Lippert claims that Carnes was not prepared for trial as he did not have adequate pre-trial contact with Lippert, had no viable defense, and failed to call any of the witnesses suggested by Lippert (Doc. 1, pp. 18, 20). The Court concludes, however, that Lippert fell well short of his burden with respect to this claim.

Regarding the pre-trial contact, Lippert claims that Carnes spent "zero time perparing [sic] me for trial," (Doc. 1, p. 20). According to Lippert, during the period of time between his arrest and the trial date, he saw Carnes only at court hearings and had very few phone conversations with him (Doc. 1, p. 20). He further contends that Carnes never discussed with him trial strategy, potential witnesses, or the evidence against

him, or told him that he did not have to testify at trial (Doc. 1, pp. 17, 20). While Lippert apparently wanted to communicate more frequently with his counsel and participate more earnestly in counsel's preparation, it does not necessarily follow that Carnes was not ready for trial or otherwise deficient in his performance. *Morris v. Slappy*, 461 U.S. 1, 11 (1983) ("Not every restriction on counsel's time or opportunity . . . to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel."); *United States v. Olson*, 846 F.2d 1103, 1108 (7th Cir. 1988) ("[W]e know of no case establishing a minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel.") (citation omitted). Lippert does not suggest in any way or present any evidence as to how the outcome would have been different if he would have had more frequent contact with Carnes prior to trial. *See United States v. Wallace*, 753 F.3d 671, 675 (7th Cir. 2014) ("If communication with the defendant's counsel broke down as a result of neglect or ineptitude by counsel, the defendant may have a claim of ineffective assistance of counsel, but to prove that he would have to present evidence."); *United States v. Goudy,* 792 F.2d 664, 671–72 (7th Cir. 1986) (holding petitioner failed to establish that he was prejudiced by infrequent communication with counsel because he did not "suggest in any way how the outcome of the trial would have differed . . . if his attorney had met with him some unspecified number of times before the trial."); *see also United States v. Ceballos*, 302 F.3d 679, 696 (7th Cir. 2002) (holding petitioner failed to establish prejudice from counsel's failure to have more frequent contact); *Olson*, 846 F.3d at 1108 (same).

As for the uncalled witnesses, Lippert does not identify the witnesses or describe their potential testimony. Consequently, his conclusory assertion is insufficient to show prejudicial error. *See United States v. Traeger*, 289 F.3d 461, 472 (7th Cir. 2002) ("[Defendant] must show what the evidence would have been and how it would have produced a different result.) *See also Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) ("To prevail on an ineffective assistance claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable.")

Lippert also alleges that he arrived at trial to discover that Carnes "had no trial strategy and no defense" (Doc. 1, p. 17). Carnes's "only advice was to plead guilty before 'they cook you in hot grease.'" (Doc. 1, p. 17). But Lippert does not specify, and the Court cannot fathom, what strategy or defense theory Carnes should have proffered. So, again, Lippert's vague conclusory assertion is insufficient to show prejudicial error.

The Court further notes that the record in this matter contradicts Lippert's allegation that Carnes was unprepared for trial. First, during the plea colloquy, Lippert swore under oath that he had discussed the case with Carnes and was satisfied with his representation. *United States v. Earl Lippert*, SDIL Case No. 3:06-cr-30161, Doc. 273, p. 18. As the Seventh Circuit has previously explained:

> When a district court conducts a Rule 11 colloquy, it is not putting on a show for the defendant, the public, or anybody else. The purpose of a Rule 11 colloquy is to expose coercion or mistake, and the district judge must

> be able to rely on the defendant's sworn testimony at that hearing.
> Because the court takes a criminal defendant's rights at a change-of-plea
> hearing very seriously, it is reasonable to expect, and demand, that the
> criminal defendant do so as well. For that reason, a defendant is normally
> bound by the representations he makes to a court during the colloquy.

*Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010); *see also Koons v. United States*, 639 F.3d 348, 352 (7th Cir. 2011) ("We treat sworn statements made in open court most seriously and demand that parties tell the truth.") Because Lippert makes no attempt to explain the contradiction between his sworn statements to the Court at the plea colloquy and the arguments he makes in his current § 2255 petition, there is no basis "to override the verity that presumptively attaches to a defendant's statements when entering a guilty plea." *Hutchings*, 618 F.3d at 699 (citing *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2010)).

Second, the record affirmatively shows that Carnes was actively involved in the case and adequately prepared trial. For example, Carnes took steps to investigate the case by submitting to the Government a five-page list of documents and information that he wanted produced prior to trial. *United States v. Earl Lippert*, SDIL Case No. 3:06-cr-30161, Docs. 29, 158. He was prepared to call witnesses to aid in Lippert's defense. *See id.* at Doc. 157. He filed motions to bar a variety of evidence from the trial and argued against the Government's motion to do the same, both of which are evidence of his responsiveness to developing facts and his attempts to prepare a defense. *Id.* at Docs. 159, 273. For these reasons, Lippert's claim that Carnes was ineffective because he was unprepared for trial must fail.

### b. Objecting to the Government's motion *in limine*

Lippert also claims that Carnes was ineffective because he objected to the Government's motion *in limine* seeking to bar any mention of Lippert's sexual relationship with his teenage daughter (Doc. 1, p. 18). As a result of the objection, testimony that Lippert had sex with his fourteen-year-old daughter was going to be permitted at trial, which Lippert claims would have been "highly prejudicial" to him (*Id.*). As a result, Lippert felt pressured into pleading guilty (*see id.*). Lippert asserts that if Carnes would not have argued against the motion *in limine*, he would have decided to go to trial (Doc. 1).

"Trial tactics are a matter of professional judgment, and . . . we will not play 'Monday morning quarterback' when reviewing claims that an attorney rendered constitutionally deficient representation in making decisions on how to best handle a case." *United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011) (quoting *United States v. Malone,* 484 F.3d 916, 920 & n.1 (7th Cir. 2007)). "In other words, it is not our task to second-guess counsel's judgment and replace it with our own." *Lathrop*, 634 F.3d at 937. "So long as an attorney articulates a strategic reason for a decision that was sound at the time it was made, the decision generally cannot support a claim of ineffective assistance of counsel." *Lathrop*, 634 F.3d at 937 (citing *United States v. Cieslowski,* 410 F.3d 353, 360 (7th Cir. 2005)).

The crux of Lippert's argument is that his sexual relationship with his daughter was so inflammatory that no competent attorney would ever argue against excluding evidence about it. But Carnes went to great lengths to explain that he did not want this

evidence excluded because he potentially wanted to use it to attack Lippert's daughter's credibility. *United States v. Earl Lippert*, SDIL Case No. 3:06-cr-30161, Doc. 273, pp. 3–10. Specifically, Carnes wanted to reserve the option to bring up her statements regarding her sexual relationship with her father because he felt that he could prove the statements were false. *Id.* at Doc. 273. And impeaching her on these statements would also discredit her statements that her father gave her methamphetamine, which represented the majority of evidence supporting Count 2. *Id.* at Doc. 273.

It is clear from the record that Carnes understood how profoundly damaging this testimony could be and Judge Murphy's skepticism about the wisdom of his decision. *See id.* at Doc. 273, pp. 8, 9. While the common custom is certainly to seek to *exclude* the inflammatory evidence, Carnes chose to fight to *include* it because it was the basis for his defense. If Carnes had not opposed the motion, then he would have essentially given up his only defense. Obviously, Carnes's decision to oppose the Government's motion *in limine* was a strategic decision that was reasonable at the time it was made. Therefore, his decision cannot be considered objectively deficient, and Lippert's claim must fail.

### c.   Misinformation about potential sentence

Lippert also claims that Carnes was ineffective because he misinformed Lippert about his potential sentence. Lippert claims that Carnes told him that, by pleading guilty, he would receive a sentence of thirty years or less (Doc. 1, p. 16). But if he went to trial, he "would be cooked in hot greasa [sic]" and "face a life sentence" (Doc. 1, p. 16). He argues that Carnes should have told him that if he pleaded guilty, he still faced "an automatic life sentence based on the U.S. Sentencing Guidelines" (Doc. 1, p. 16).

Lippert claims that he had no idea what was truly at stake" or that he faced a potential "mandatory life sentence" (Doc. 1, p. 17). Lippert asserts that he would have proceeded to trial or "secured a structured plea agreement" absent Carnes's guarantee of a thirty-year sentence.

Lippert's argument that Carnes was ineffective for failing to tell him that he faced a potential "automatic" or "mandatory" life sentence if he pleaded guilty is a non-starter. The Supreme Court announced years before Lippert was ever indicted or sentenced than the sentencing guidelines were no longer mandatory, but were advisory. *United States v. Booker*, 543 U.S. 220 (2005). Thus, if Carnes had told Lippert that he faced a mandatory life sentence, it would have been an inaccurate statement of the law. The fact that Carnes did not misadvise his client is the epitome of competent representation and can never be considered ineffective assistance.

As for Lippert's assertion that he was promised a thirty-year sentence by Carnes, even if the Court accepts the assertion as true and assumes that Carnes's was deficient for making such a guarantee, Lippert cannot show actual prejudice for a number of reasons. First and foremost, Lippert's argument ignores the inescapable reality that he still faced the possibility of spending the rest of his life in prison even if he had proceeded to trial on Count 2 and been acquitted. He had already pleaded guilty to Count 1 for conspiracy to manufacture methamphetamine, and his guideline sentence on that count was life imprisonment. The sentencing consequences that Lippert faced regardless of whether he pleaded guilty to Count 2 significantly temper his assertion

that he would have proceeded to trial absent Carnes's guarantee. *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010).

His assertion also rings hollow in light of the discussion of potential sentencing consequences during the plea colloquy. The prosecutor explained that Lippert's maximum possible punishment under the applicable statutes was life imprisonment. *United States v. Earl Lippert*, SDIL Case No. 3:06-cr-30161, Doc. 273, p. 22. Carnes indicated he had also explained that to his client. *Id.* at Doc. 273, pp. 22–23. Then Judge Murphy reiterated for a third time that the maximum punishment Lippert faced under the applicable statutes was life imprisonment. *Id.* at Doc. 273, p. 23. Lippert acknowledged that he understood the statutory maximum sentence. *Id.* at Doc. 273, p. 23. Following the discussion of the statutory maximum punishment, the prosecutor explained that Lippert's guideline sentence was life imprisonment, which Judge Murphy reiterated. *Id.* at Doc. 273, pp. 23, 24. Judge Murphy then asked Lippert if he had discussed the guideline sentence with Carnes. *Id.* at Doc. 273, pp. 23–24. Lippert indicated that he had. *Id.* at Doc. 217, p. 24. Judge Murphy then explicitly told Lippert that no matter what sentence his attorney recommended, the Court was not bound by that recommendation. *Id.* at Doc. 217, p. 25. The Judge went on to say, in no uncertain terms, that "[a]t the end of the day, I'm going to make the decision on what your sentence will be, irrespective of whether it might be contrary to what somebody else says." *Id.* at Doc. 217, pp. 25–26. Lippert stated that he understood. *Id.* at Doc. 217, p. 26. And when asked whether "anyone promised you what your sentence will be," Lippert answered, "No, sir." *Id.* at Doc. 217, p. 26.

Simply put, to the extent that Carnes gave Lippert bad information about his possible sentence, Lippert was alerted to that mistake during the plea colloquy and repeatedly given the right information. When a plea colloquy addresses the length of sentence, it "ameliorate[s] the adverse impact of his counsel's misinformation." *See Hutchings v. United States*, 618 F.3d at 699 (distinguishing *Moore v. Bryant*, 348 F.3d 238, 243 (7th Cir. 2003)).

Additionally, Lippert swore under oath that he understood the statutory maximum and guideline sentence were life imprisonment. He also swore that no one had promised him what his sentence would be. The Court is entitled to credit Lippert's sworn statements over the contradictory arguments that he is now making in his § 2255 petition. *See Koons v. United States*, 639 F.3d 348, 352 (7th Cir. 2011); *Hutchings*, 618 F.3d at 699. That is especially true since Lippert has not addressed the contradiction or really attempted to explain why he supposedly lied to the Court during the plea colloquy. The only thing that could possibly be considered an explanation for perjuring himself during the plea colloquy is Lippert's insistence that he was pressured into pleading guilty by Carnes's statement that the jury would boil him in hot grease if he went to trial (Doc. 1, Doc. 4). However, the Seventh Circuit previously explained that statement, taken in context, was nothing more than an expression of Carnes's opinion "that this was a bad case to take to trial and Lippert's daughter would be a sympathetic and altogether devastating witness." *United States. v. Lippert*, 401 Fed.Appx. 137, 141 (7th Cir. 2010). It was plainly not a threat meant to coerce Lippert into pleading guilty, and the Court does not believe for a second that it actually had any coercive effect.

Accordingly, once again, Lippert's assertions are insufficient "to override the verity that presumptively attaches to a defendant's statements when entering a guilty plea." *Hutchings*, 618 F.3d at 699 (citing *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004)).

Accordingly, even assuming that Carnes guaranteed Lippert a sentence of thirty years or less if he pleaded guilty, the Court cannot accept Lippert's assertion that he would have pleaded guilty absent that guarantee. His claim that Carnes was ineffective for misinforming him about his potential sentence must fail.

In sum, Lippert has failed to establish that any of the purported errors by Carnes was a decisive factor in his decision to plead guilty.

### 2. Ineffective Assistance at Sentencing

Lippert alleges that Carnes was ineffective at the time of sentencing because he failed to object to the improper § 851 enhancement, and as a result, he was sentenced to 360 months on Counts 3 and 4, instead of 240 months (Doc. 1). Once again, the Court concludes that Lippert fell well short of his burden with respect to this claim.

In order to succeed on a claim of ineffective assistance of trial counsel at the sentencing hearing, Lippert must demonstrate "that his attorney performed in a deficient manner during the hearing, and then prove that but for his counsel's unprofessional error, there is a reasonable probability that the results of his sentencing hearing would have been different." *Fuller v. United States*, 398 F.3d 644, 650 (7th Cir. 2005) (internal citations and quotation marks omitted).

The Seventh Circuit Court of Appeals already reviewed the validity of the § 851 enhancement and held that it was improper. *United States v. Lippert*, 401 Fed. Appx. 137, 140 (7th Cir. 2010). In particular, the Seventh Circuit found that no notice of enhancement had been filed and therefore the statutory maximum on Counts 3 and 4 of 240 months could not be increased to 360 months. *Id.* Accordingly, Judge Murphy committed plain error by sentencing Lippert to 360 months on Counts 3 and 4 as it was beyond the statutory maximum. *Id.* The Seventh Circuit corrected the error by reducing Lippert's sentence on Counts 3 and 4 from 360 months to 240 months. *Id.*

Based on the Seventh Circuit's opinion, it appears to the Court that Carnes was indeed ineffective for failing to object to the § 851 enhancement, and Lippert was prejudiced because he received a sentence that was ten years beyond what the statute permitted. That being said, Lippert's claim is moot because the relief he seeks has already been granted by the Seventh Circuit, and this Court can offer him nothing more.

### 3. Ineffective Assistance on Direct Appeal

Lippert's final argument is that he was denied his Sixth Amendment right to effective assistance of counsel on appeal when Carnes was discharged from representing him by the Seventh Circuit (Doc. 1). "The framework for assessing the constitutional effectiveness of appellate counsel is the same two-pronged *Strickland* test as for effectiveness of trial counsel." *Warren v. Baenen*, 712 F.3d 1090, 1105 (7th Cir. 2013). While it appears that Carnes's performance on direct appeal was inarguably deficient, Lippert has not shown how he was prejudiced. The Seventh Circuit discharged Carnes and appointed new counsel for Lippert, and the Court presumes that

the appointment of new counsel nullified the effects of Carnes's deficient performance. Lippert has not provided any explanation or set forth any evidence showing that to be untrue or how the results of the appeal would have been different but for Carnes's ineffectiveness. Accordingly, Lippert's claim that Carnes was ineffective on appeal must fail.

## CERTIFICATE OF APPEALABILITY

Should Lippert desire to appeal this Court's ruling dismissing his motion, he must first secure a certificate of appealability, either from this Court or from the Court of Appeals. *See* FED. R. APP. P. 22(b); 28 U.S.C. § 2253(c)(1). Pursuant to § 2253, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."

This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Lippert need not show that his appeal will succeed, but he must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part. *Miller-El v. Cockrell*, 537 U.S. 322, 337, 338 (2003). If the district court denies the request, a petitioner may request that a circuit judge issue the certificate of appealability. FED. R. APP. P. 22(b)(1)-(3).

For the reasons detailed above, the Court has determined that Lippert has not stated any grounds for relief under § 2255, and reasonable jurists could not that conclusion. Thus, Lippert has not made "a substantial showing of the denial of a

constitutional right," and a certificate of appealability will not be issued.

## CONCLUSION

Earl Lippert is unable to satisfy the high burden of showing his counsel, Thomas Carnes, rendered ineffective assistance or that he is entitled to any relief. Consequently, his Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**, and this action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

If Petitioner wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Petitioner chooses to go straight to the Seventh Circuit, he must file a notice of appeal in this Court *within 60 days* from the entry of judgment or order appealed from. FED. R. APP. P. 4(a)(1)(B). The deadline can be extended for a short time only if Petitioner files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard). Additionally, the Seventh Circuit will not address the merits of Petitioner's appeal unless he obtains a certificate of appealability. 28 U.S.C. § 2253(c); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners.") Because the undersigned has already declined to issue a certificate of

appealability, Petitioner must seek one from the Court of Appeals under Federal Rule of Appellate Procedure 22.

On the other hand, if Petitioner wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 60-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 60 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760–61 (7th Cir. 2001); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977).

The Court has one more bit of instruction regarding the appeals process. If Petitioner chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Petitioner plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

**DATED: September 29, 2015**

<u>s/ Nancy J. Rosenstengel</u>
**NANCY J. ROSENSTENGEL**
**United States District Judge**